Last case on the call for the morning today is Renshaw v. Gupta, cause number 5-14-19. And Mr. Anderson, when you're ready to proceed, please do so. Good morning, Your Honor. I'm Daniel Anderson, I'm the attorney for this defendant, Mr. Gupta. Your Honor, this is an appeal from a grant of a default judgment against my client, Mr. Gupta, and the denial of our motion to vindicate that default judgment. We present three issues for the court, and I believe that we, the court, could agree on any of those issues, or all of those issues, and reverse the decision of the circuit court. And that's what we ask the court to do today. I think that this case really is a procedural case. What we are faced with in this case are questions about the application of the Supreme Court rules and the adequacy of summons. There's a little overview. The lawsuit involved in this case stems from a legal contract that was signed in August 12th of 2002. This lawsuit was filed on August 1st of 2012, about 10 days before the statute of limitations for filing the suit would have run. It was seeking payment of unpaid legal fees, plus interest. The record on appeal reveals that there was really no attempt at service on Mr. Gupta until April 30th, 2013. And at that point, the summons was served on Mr. Gupta's estranged wife and his estranged wife's residence. The summons used was the original 30-day summons that had been issued back on August 1st, 2012. That service failed. Mr. Gupta was then later tempted to service at the Jefferson County Courthouse on June 11th, 2013. And again, the same copy of that same original 30-day summons was used. When Mr. Gupta received that summons, he entered a pro se limited appearance with the circuit court to contest the jurisdiction based on the lateness of the service. That was on July 12th of 2013. The plaintiff filed a motion to strike his, Gupta's attempt to contest jurisdiction. And that resulted in a hearing being set in August 26th of 2013, at which Mr. Gupta appeared with Attorney T.J. Parrish. And at that point, Mr. Renshaw confessed that he had not achieved adequate service on Mr. Gupta in the past. The record shows the entry of appearance by Mr. Parrish and acceptance of the summons. We have, preparing with the motion that was filed to vacate the default judgment, affidavits from T.J. Parrish, which indicate that he entered his appearance specifically noting he was reserving the right to challenge the adequacy of jurisdiction for service of summons. And on the argument that they had a diligent effort to serve Mr. Gupta. Does the court's docket entry of August 26th reflect that? No, it doesn't, Your Honor. And there's a dispute as to what we're to make of that. I would note that, however, it's clear that at the time that Mr. Parrish entered his appearance, we already know that Mr. Gupta was aware of the question about the proper service. Because he had entered his appearance trying to reserve his right to challenge adequate service. So I think it's reasonable to assume that his attorney would have understood that basis and would have made that reservation. And that's what he represents in his affidavit. And there was no court report or no record made of this August 26th hearing, is that correct? No, Your Honor. So all we've got is the docket entry and then Attorney Parrish's affidavit. Correct, Your Honor. Now, apparently, based on information that came out subsequently in the affidavit, Mr. Renshaw advised Mr. Parrish that he and Mr. Parrish would have a conflict representing Mr. Gupta. And as a result of that, Mr. Parrish didn't make any effort to file a substantive motion on behalf of Gupta. On October 16th of 2013, there was a case management conference. And at that time, Mr. Parrish advised the court that there was a conflict and that he would need to withdraw. On the 17th, he filed his motion to withdraw, which the court allowed. And that specifically brought into play Superior Court Rule 13c2, which gives the defendant 21 days to obtain new counsel. Counsel, was there a motion for default filed by the plaintiff for default judgment being entered? And I guess I could wait and ask the plaintiff here in a minute. At the October hearing where Attorney Parrish appeared, he was in default then because nothing had happened within that 30 days of August the 26th. Did anyone ask for default judgment at that point in time? I believe so, Your Honor. I believe that Mr. Parrish appeared and advised the court of the conflict. And the discussion at that point, apparently... So when the court did enter the default judgment, was it on its own motion or was there a motion... There was a status hearing on the October 16th case management conference. There was a status hearing set for November 6th. And on November 6th, at that status hearing, again, we don't have a court reporter. Defendant failed to appear and the default judgment was entered, presumably on Mr. Renshaw's motion. But... I guess what happened was on the 6th, the court said, you know, you're allowed to withdraw, give you 21 days, but the actual order didn't get entered until on the 7th. Well, the motion wasn't filed and the word was not entered. Right. So nothing actually happened. It was discussed verbally. Yes. It actually happened until the next day. Yes. So the court, we might presume, in entering the status hearing on October 6th, had counted 21 days out and thought, you know, when he appeared on that date, that it had been 21 days. Experience suggests that that's plausible, that that's how that happened. Nevertheless... But it was the 20th day. And what Mr. Gupta had was information that he had to have something done by the 7th and it wasn't given until the 7th. When a motion to withdraw is filed and there's 21 days for the party to get another attorney or enter an appearance with their address and whatnot, you think the law is that it automatically stays the case that nothing can happen during that 21 day time period? Nothing substantive. That's pretty much the meaning of the Ali case that I cite. I think there's a Robert S. case involving juvenile termination of parental rights where they acted before the parent had a chance to have the 21 days pass and that was found to be improper. So I think a fair reading of what 13C intends is you don't have an attorney. You've got 21 days to get one to do this work for you. And if we're not going to do something substantive, that's ministerial acts that are supposed to be carried out with regards to record keeping and rectifying anything that might be incorrect in the docket sheets. But I don't know that any substantive hearing can be held. Certainly, as I say in the reply brief, if you tell someone you've got 21 days, you can't come back in 10 days and have a hearing without counsel and enter a judgment against them. You tell them you've got 21 days, it's 21 days. That's what the Supreme Court rule requires. That's what the law intends. I'd also note that Mr. Renshaw's brief acknowledges that it's until the 7th that he had to have taken counsel. We've already talked to some about this first issue, which is that it was Eric who entered the default judgment before the 21-day period had passed. Our argument is subject to no overview because we're interpreting Rule 13c-2. And under 13c-2, it's clear that you've got 21 days to obtain counsel or enter your own appearance. With a default judgment given in 20 days, it was premature. Now, I cite some very old cases, the Fangley case from 1935, which talks about pre-interpret defaults, probably subject to being vacated. Now, that was a lack of a counsel issue that had more to do with the time given to someone to file an answer. But the premise remains the same. If you're given a specific time in which to act and the court acts before that time runs, the premature default judgment should be vacated. That follows on, then, to the Supreme Court rule and the Ali case from 1993, where premature dismissal was reversed for violation of the rule in the 2005 Robert S. Perone rights case. I think it's important to remember that the entry of a default is supposed to be a drastic lack to preserve, and they are subject to being set aside for good cause. I cite the Rockford Housing case from 2003 for that principle. Per Rule 13c-2, the court told Mr. Goode that he had 21 days to obtain counsel. The court entered the judgment in 20 days. It's premature. That entry is invalid, and it should be reversed. It was error for the circuit court to deny the motion to vacate the default judgment, and this court has the power to reverse that decision and remand the case or determine that error has occurred, and the circuit court gets another crack at it. Mr. Goode gets another crack at it with counsel. The second issue has to do with the adequacy of the service of timely summons, and this is a Rule 103b issue. Is that something we would decide at this point? I mean, you're wanting the – is that a process for vacating? Well, the violation of Rule 103b results in a void decision that can be attacked at any time. So I would say yes, it's split. Well, my point is the circuit court's never ruled on that issue. I mean, it's not like we're acting as a court of review on that issue because the circuit court's never determined it. But it's a void judgment, which is subject to attack. The facts are what the facts are as far as when the lateness of the service of the filing of the lawsuit, the lateness of the service of the summons, lack of an alias summons, and under 103b. I would argue that this Court does have the power to review this issue. Our argument is that there's just been a lack of diligence by counsel, and he had the fair ability to obtain service on Mr. Goode. He was let go for months and months. I argue that certainly one of the points that Mr. Parrish would have been raising for Mr. Goode based on the representation in his affidavit is this 103b issue. He didn't get a chance to make that argument because we would default it out on a premature default. So I believe it falls to this Court. Arguably, this Court remains based on our first argument. This issue would then be right again in the circuit court. My final issue is simply that there never was proper service at all because every summons presented was an old, out-of-date summons and has no vitality. There was no attempt to get an alias summons, and for that reason, there's no jurisdiction in the Court. There's no jurisdiction. Its actions are void. They're subject to being reviewed by this Court, and the suit should be dismissed. That's what we ask this Court to do. Again, alternatively, we ask in argument one that you remand the case due to the violation of the Supreme Court rule. Alternatively, we ask that you review it on these other issues and find that the rules have been violated and the suit is subject to dismissal. Any questions? I have no questions. Mr. Renshaw. Please, the Court will count. I'm Kent Renshaw. I am the plaintiff, and I have to apologize. I've had some bleeding retina in my right eye, and I have no vision in that eye, so bear with me if I take a little bit of extra time finding things. No need to apologize for that. Okay. All right. Thank you. Judge Hoffman always told me, he said, don't ever apologize for these things. For physical reasons, I think I should. Judge Stewart, I think you said that the Court hasn't reviewed the ability or the attempted service. You are correct that there's been no evidence presented to the trial court regarding the service of some. I mean, if we find that the circuit court uses discretion in not vacating the default judgment, then that can only be got to later. Yes, sir. And as the opposing counsel pointed out, this all stems from an engagement agreement that Dr. Gupta, or Mr. Gupta, entered into on August the 12th, 2002. Because there were – I've got a small office. I'm a solo practitioner. I don't have a secretary. I've got a couple of staff people that help with title come in. And I didn't have the wherewithal to continue with this case because it involved two doctors with a great amount of property, property in Chicago, personal property in Central India, commercial properties and all. And because of that, I turned this case over to Wayne Hart. So he took it over in the spring, the very early year of the year in 2004. And soon after Attorney Harvey took over the case, he filed a verified petition for attorney fees, interim attorney fees and costs, wherein Gupta admitted indebtedness to my office for the amount claimed plus the interest and signed off on the petition. Well, that was on March the 3rd, 2004. Well, 735 ILCS 513-206, which is the statute of limitations for contracts, for written contracts, action on written contracts shall be commenced within 10 years next after the cause of action accrued. But if any payment or new promise to pay has been made in writing on any contract or other written evidence of indebtedness within or even after the period of 10 years, then an action may be commenced thereon at any time within 10 years after that time of such payment or promise to pay. So in essence, the statute of limitations began again on March 3rd, 2004. That puts it to March 3rd, 2014. And the filing of Gupta's verified petition that caused that to go to 2014 was a date long after any proceedings occurred in the trial court in this case. So for the appellant defendant to stand here and say everything was outside the statute of limitations, that's not accurate. Or at least arguably not accurate. Arguably not accurate, according to the statute. And their notion of de novo review is strictly based on their desire to make sure that this is beyond the statute. So we can't get good service. We don't have standing to go forward. But you've got to realize that from 2004 to 2012, the defendant had endured numerous legal issues that are required to serve the process. And some of those, besides his ongoing separation and dissolution issues, were the temporary and permanent loss of his medical license for both drug abuse, sexual activities with patients in exchange for drugs, and a conviction for lying to federal agents. And you can imagine what assorted credit problems he had that would be subject to the process of service. But the defendant had dealt with a legal system to such a point that it was very adept at avoiding the process of service. On August 1st, 2012, we filed our petition for breach of contract against the defendant, and a summons was issued. That was within even the original statute of limitations. Gupta had been so good at avoiding service that even after several months of investigations and attempts by private process services, they could not find him. We found later, on August 26th, 2013, a year later, that he had taken up residence in his former business at Prompt Care 2712 Broadway here in Mount Vernon. We had attempted service there several times, but were continually told he had no connection to that office, he did not live there, and he had moved back to India. That was early on when the summons was fresh and vital. But because we couldn't find him, and we thought that he had moved back to India, we did not go to the trouble of having an alias summons issued every third day. But on June 11th, 2013, we learned that Mr. Gupta, the defendant, was in the courthouse in Jefferson County, that he was preparing to leave, and if we want to serve him, we better get up there. Rather than take the chance of losing him again, we took a copy of the summons that was obviously outdated, a copy of the complaint, buttonholed the deputy in the courthouse, and had him serve Mr. Gupta before he left. Had we taken the time to get a new alias summons, he would have been gone and we would have missed the chance. Okay, now we go forward to, that was in June, I believe, yeah, June 11th, 2013. We finally got dates for court, and Mr. Gupta appeared on August 26th. Now, there's lots of things that occurred on the 26th in 2013. He came in with a limited entry of appearance, but he didn't file any motion to dismiss or motion to apply for service. Never did file that motion. A discussion ensued. Now, at this time, Attorney Parrish was standing at the bar with Mr. Gupta, but he had not yet entered his appearance. Even though he entered into the discussion prior to him filing his appearance, he had not yet filed. And that's when we learned that Dr. Gupta, or Mr. Gupta, had been at 2712 Broadway ever since his separation in 2002. We'd just been lied to many times. And at some point, Gupta had turned over his business to a Dr. Franklin, but continued to reside within the building, within the business. And in that hearing on the 26th, it became evident that service could now be easily made at Prompt Care at 2712 Broadway here in Mount Vernon. During business hours, any day, Monday through Friday. And whenever Gupta realized he could no longer avoid good service, he stood within five foot of Judge Neubauer, looked him squarely in the eye, and said, I will accept service. And he waived any formal service. That's the remarks that were made on the docket entry by the trial court. Now, at that point, he waived any objection to service. Even though, if the statute is, what I say about the statute is statute of limitations, even if it's incorrect, he just waived any objection that he had. Attorney Parrish did not waive it. The plaintiff, or the defendant himself, waived formal service. And submitted himself, at that moment, to the jurisdiction of the court. Now, at some point later on, Mr. Parrish had told me that he did not know if he was going to enter the appearance. But at some point later on, he did hand the trial court a document entering his general appearance. Which I know is an appearance statute. There are no more limited appearance and all that. That all changed when something like that took effect. We understand that the defendant wants this to be a de novo review, so he can go back and say, statute of limitations, run, he's done. Well, that wasn't a fact, because it took two reasons. Because the 735-513-206 extended statute of limitations. Plus, he had forfeited his right to object to any problems with service when he had admitted to the jurisdiction of the court and submitted to it. Counsel, let me interrupt you before you run out of time and ask you a couple questions. I'd ask counsel about the court's entry of the default judgment. Was it on its own motion, or had you asked for a default? No, I believe that I filed a motion, or at least I got to, that's what I'm going to get to here. Just answer that question, if you would. Yes, I think it was on my motion. And I think it was a written motion. But see, the problem with that, on the 26th, Gupta was there, who turned out to be his attorney. And the court told him at that time he'd have 30 days to file a response of pleading after he submitted to the jurisdiction. And September 26th, or a day later, there wasn't any answer, no pleading, no nothing, filed by Gupta. Case management was set for October 16th. And at that time, Attorney Parrish was still in the case, and the court admonished Parrish that his client was 21 days in default. And Parrish advised the court that there was a possible conflict, because Attorney Parrish, I had talked to him about representing me in this case, and we had talked about it a few times. That's the reason he couldn't continue on. But he said that he, and this is from October 16th, Attorney Parrish told the judge, in my presence, that he would be meeting with his client that morning to sign the withdrawal, motion to withdraw, agreed motion to withdraw, and would bring him the order the next day, that day. Well, the court, thinking that that was going to occur, he made the date of November 6th, 21 days, just like Judge Stewart said, 21 days later. And it was my intention, I told him at that time, I will be filing a motion for default judgment, and I'll be here on the 6th with that motion. Well, Attorney Parrish didn't get back over with it. He was supposed to bring it back that afternoon. He didn't get there until the next day, the 17th. So that made the November 6th, 20 days, 21, just like you perceived. So when we got there on the 21st, they hadn't filed anything. No one had appeared. He didn't appear. Apparently, from Attorney Parrish's affidavit, he neglected to advise, and he had, honestly, had an opportunity, he had an opportunity to sign the documents for the agreed withdrawal. He should have told his client then to be there the 6th of November, because there was a hearing set for that day. And you're in default, many days. But apparently, according to Attorney Parrish's affidavit, he neglected to advise Gupta that he had a hearing on the 6th. There's no record anywhere in the proceedings that Gupta himself received any notice of that hearing date from the court. Is that correct? No, but it had been set on the 16th of October, when Parrish was there. I understand that Gupta wasn't there. No. And there's no indication of a notice going to Gupta about that hearing date. No, but he knew he had 30 days from August the 26th to file a response of pleading. And he knew it was far past that. But it's interesting to note, now, the fact that the clerical error one day was the reason. I mean, we know why. And had Gupta come in and filed a response of pleading, filed his interim appearance, substituted counsel, whatever had been on the 7th of November, I'm sure Judge Neubauer would have vacated the default judgment that he'd entered the day before. But he didn't come in the 7th. He didn't come in the 20th. We didn't hear from him for 49 days. He had every case that they present in their briefs and in their arguments. Ali, someone had come in to appear to try to file a response of pleading within the time limit. In this particular case, he never did appear. He has never even appeared back in the court since August the 26th. Pete, let me just ask a question here. The motion to vacate the default judgment was filed within 30 days after the default judgment was entered, wasn't it? Yes. Okay. Yeah, it was 49 and 50 days. But that was... Well, what are you talking about, 49 and 50 days from... Well, from the... It was filed within 30 days of the default judgment. But his appearance, his 21 days, started on the 17th of October. We didn't hear from him until December somehow. Okay. Had he come in and made some kind of an effort to file an adherence or substitution account for some time, even remotely close to within 21 days, the default judgment would have been vacated. I'm certain of that. But there wasn't anything within 21 days, within 30 days, within 49 days. He just totally ignored everything. Counsel, this Ali v. Jones case that was cited by the defendant, you could read it as saying, once the court enters a motion to withdraw and sets up this 21-day time period, the court cannot do anything substantive in the case on that 21-day time period, or within that 21-day time period. Do you agree with that or disagree with that? Well, I don't necessarily agree with it because that was... They filed an entry of adherence or a period or whatever within the 21-day period. And I think in that case, well, I know in that case, the case that was set for trial at a previous date within the 21 days, and the party who was supposed to get a new attorney appeared and said, well, I'm not ready for the trial. I thought I had 21 days. And then the court denied that motion for continuance of the trial, and the appellate court reversed and said, no, the trial court should not have done anything within that 21-day time period. Well, we had the opportunity to file a motion for default judgment many, many days, even before the 21 days, the 21-day period. So for a clerical error, do we look at that and say, boy, this is abuse of discretion? That's a little bit tough, especially since he never did appear or substitute counsel or file, I mean, how many, what's he, 100 days or so, over 100 days in default? From the time the judge said he had originally in August of 26, he had until September 26, there it was, December, and he still hadn't responded. I mean, we could have gone in at any time after the 21 days, after 30 days or whatever, and filed a default judgment, and they still, if we had filed it, it would have made a difference. The judge, the trial court, they considered, he considered all this. Counsel, did either you or Mr. Gupta or Mr. Parrish ever tell Mr. Neubauer, the trial judge, the nature of the conflict as to why Mr. Parrish was withdrawn? I don't recall. I really couldn't tell you. I don't think our discussion about that was within the hearing in the court. I don't believe so. You got something else? You're looking at me like you got something else. I don't have a question, no. Okay. But on all the issues presented, we asked that you uphold the trial court, and if it is sent back, send it with directions, and we'll get this taken care of, but I don't think it's necessary to send it back, and I hope you agree to that. Thank you very much. Thank you, Mr. Renshaw. Rebuttal, Mr. Anderson? Yes, Your Honor. Your Honor, first of all, I'd like to address counsel's comments about the extension of the statute of limitations by an agreement or documents filed by Mr. Harvin. There is no argument about that in Mr. Renshaw's brief on Peel, and I would argue that this is waived, and there's no basis for this court to act on his argument regarding that. It wasn't raised in his briefs. Well, it all goes to the 103B argument, which hasn't been ruled on by the circuit court anyway. Nevertheless, the argument was briefed by us, and he had a chance to respond to his brief, and has only waited until now to raise the argument, and I would argue it's waived. I would also argue, Your Honors, that this court should essentially strike in disregard much of counsel's argument, which was testimonial. He was telling you what he observed in the circuit court. He recalls what happened in the circuit court. He told you how small his law practice is. None of that is evidence presented in the circuit court. It's not sworn testimony, and it's not proper argument, and I would ask that Your Honors do disregard it. We'll sort out what's supported by the agreement and what's not. Thank you, Your Honor. I nevertheless maintain, Your Honors, that I think it's pretty clear that we have a written document that says you have 21 days. That's November 7th. And whether it's 21 days or 10 days to file an answer, and in other cases, if the court enters a judgment before the time it specifically told the defendant he had to ask, then that's simply violating the essential fairness that we expect of the courts, and it's what the Supreme Court rules are intended to enforce. And for that reason, I think it's required of this court to reverse the decision of the circuit court and remand the case. I would ask this court to consider the arguments we've raised on other issues. I believe that they are issues regarding the application of the Supreme Court rules and are available to this court for review. Your Honors, I want to thank you for your time. Thank you. All right. Thank you both for your briefs and your arguments. We'll take this matter under advisement and issue a written decision in due course. Thank you. Court will be in recess until 110.